## 𝕷𝖊𝖙𝖙𝖊𝖗 𝕺𝖋 𝕬𝖉𝖛𝖎𝖈𝖊 𝖆𝖓𝖉 𝕷𝖊𝖌𝖆𝖑 𝕹𝖔𝖙𝖎𝖈𝖊

August 21, 2006

Delivery Confirmation 0306 0320 0005 3031 7236

**To:** Peter T. Dalleo Clerk of US Delaware District Court
J Caleb Boggs Federal Building
844 North King Street Lockbox 18
Wilmington, DE 19801-3507

**From:** phillip allen dye Secured Party
Mail Location: Post Office Box 508
Odessa, Delaware 19730


Ref: Offer of Tender of Payment of District Court of District of Delaware Filing Docket $350.00 Fee included with application to proceed without payment of fees.

Dear Clerk of Court:

This is a letter to advise and give notice to you that a Financial Transaction from the Assignor's Uniform Commercial Code Contract Treasury Account that completely paid off enclosed Debt Presentment, has taken place with the issue of the enclosed Statement of Assignment of Account. Your compliance is required to accept payment offer and satisfy all debt liens and report lien satisfaction with all credit reporting agencies under Commerce Commercial Laws of the United States, the Laws under the Uniform Commercial Code and pursuant to the enclosed Uniform Commercial Code-1 Financial Statement, Security Agreement and Copyright Notice.

All documentation shall be satisfactory to the U.S. Secretary of Transportation in form and substance, as sole trustee or receiver in proceedings related to Bankruptcy, Equity, or Admiralty and in accord with the USC Title 46, §-1247.

- (A) Found and determined that the Ens Legis Debtor name in the enclosed Commercial Security Agreement is a citizen of the United States within the meaning of Section 2 of the Shipping Act 1916 as amended.
- (B) Found and determined that the Ens Legis Debtor named in the enclosed Commercial Security Agreement is a documented vessel of the United States for the purpose of Foreign Trade, Coasting Trade or Home Traffic due to the registered and recorded Certificate of Birth. Found and determined that the vessel is a preferred mortgage, that includes the whole and has as the mortgagee: a state, the United States government, a federally insured depository institution, an individual who is a citizen of the United States, a person qualifying as a citizen of the United States under Section 2 of the Shipping Act, 1916 (46 App. U.S.C. 802) or a person approved by the Secretary of Transportation.
- (C) Found and determined that the Secured Party named in the enclosed Commercial Security Agreement, as beneficiary is a person qualifying as a citizen of the United States as defined in Section 2 of the 1916 Act (46 App. U.S.C. 802).
- (D) Found and determined that the vessel will be held in trusts established as a Commercial Business Entity (Ens Legis) conducting business within the United States from Puerto Rico, Guam or the Virgin Islands under an assigned Entity Account Number as shown in the attached Commercial Security Agreement.
- (E) Found and determined that the United States guarantees the obligations of the Secured Party named herein on the attached Commercial Security Agreement under cover of a separate Security Agreement in the form of a Commitment To Guarantee Obligations by the United States of America and executed by the Secretary of Transportation for the United States.
- (F) Required that the debtor shall not merge or consolidate with any other Entity or sell, lease, transfer, or otherwise dispose of all, or substantially all, of its assets to any person or entity without the prior consent of the Secured Party name Herein on the attached Commercial Security Agreement.
- (G) The Secured Party named herein on the attached Commercial Security Agreement is authorized by law to make any and all transfers.

Please indicate your acceptance of the foregoing actions by signing and returning the enclosed copy of this letter, noting the date of signing thereon.

Sincerely,

Name: _____

Accepted by: _____

For: _____

Date: _____

## *Statement Of Assignment Of Account*
## *This Is A Valuable Document*

August 21, 2006                                             Delivery Confirmation 0306 0320 0005 3031 7236

*Know All Men By These Presents,* phillip allen dye mail location Post Office Box 508 Odessa, Delaware, party of the first part (Assignor), is a Private Native American the Secured Party of record Holder in Due Course of a Perfected Superior Secured Security Interest with unlimited Commercial Liability named in the enclosed UCC Financing Statement File No. 4100643 8 filed with the DELAWARE DEPARTMENT OF STATE UCC Filing Section on April 08, 2004.

That the party of the first part (Assignor) under the doctrine of necessity, in consideration of the sum up to the limited amount of the enclosed Debt Claim Total of $350.00 is assigning the unlimited secured interest in his UCC Contract US Treasury Account Number :0310000401:031•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••1032 as tender of payment thereof. I phillip allen dye Secured Party assign and transfer to original debtor for payment to pay to party of the second part (Assignee) The Clerk for the UNITED STATES DISTRICT COURT DISTRICT OF Delaware 19801-3507 for District Court Filing and Docket Fee for Notice of Appeal, at or before the ensealing and delivering of these presents, set over unto the said party of the second part and in accordance with the Terms of the Indemnity Clause contained within the enclosed Commercial Security Agreement and executed by Secured Party, together with the claim or obligation described in said Claim and the money due and to become due thereon, with interest accrued and owing thereon upon demand in accord with House Joint Resolution 192 and United States Code Title 31, §-5118 and §-5119 at par.

To Have and To Hold the same unto the said party of the second party, it successors and assigns forever or until payment, the said party of the first part has caused these presents to be signed in his/her name without recourse.

This statement is executed and filed pursuant to Delaware Code Annotated Title 6 Commerce and Trade UCC § 9-401.
This Valuable Document is money pursuant to U.C.C. § 1-201 (24)

### *Sui Juris – Jural Summi Imperii*

On August 21, 2006, I phillip allen dye a Private Native American National Secure Party Holder in Due Course of a Superior Secured Security Interest in Real Estate Property in Commerce with Unlimited Commercial Liability capable to manage my own affairs via UCC-1 Financing Statement, enclosed; hereby attest, affirm and declare that the information is true, valid and complete based on first-hand factual knowledge of the facts contained herein to the best of my knowledge, understanding, and belief, is affirmed by my Autograph and Seal.

_____*phillip allen dye*_____
Autograph

Name: *Innovative Consultants*
Mail Location: *Post Office Box 508*
City/State/Zip: *Odessa, Delaware 19730*


Endorsement of Assignee: _____
                                Signature
Date: _____

Deposit to: Name of Assignee's Bank _____

For Credit to: Assignee's Bank Account Number _____


The Statement of Assignment is payable through the
The Department of Transportation
Atten: Nornnil Minets
400 7th Street SW
Washington, DC 20590

*Brief in Support*

*The purpose of showing the assignment of record is to give notice that any inquiries relating to the transaction should be made to the assignee. (Alabama. Opinion of the Attorney General, 1967 Ala 4 UCCRS 132).*

*Partial assignments, or special assignments for a particular creditor U.S. Iowa 1982. Code Iowa. § 2115, providing that no general assignment for the benefit of creditors shall be valid unless made for the benefit of all creditors in proportion to their respective claims, does not prevent partial assignments with preferences, or sales or mortgages of any or all of the Debtor's property in payment or security for indebtedness. (South Branch Lumber Co. v. Ott, 12 S. Ct. 318, 142 US. 622 35 L.Ed 1136).*

*In general, U.S. Dist. Col. 1842. An assignment by a Debtor under the insolvent laws of Pennsylvania passes to the assignee a claim of the Debtor on the United States for extra services as a public officer, where such claim is presented, before the assignment in a memorial to Congress, although not granted by an act until after the Debtor has received his discharge under those laws; and the Assignee, and not the Debtor, will be entitled to receive the amount from the government. (Miller v. Metz, 41 US. 221, 16 Pet. 221, 10 L.Ed 943).*

*Also U.S. Wis 1869. A valid deed of assignment, for the benefit of creditors, generally places the property so assigned beyond the touch of the ordinary process of attachment or execution directed against the property of the assignor. (McGoon v. Scales, 76 US. 23, 9 Wall. 23, 19 L. Ed. 545).*

*U.S. Iowa 1884. The assignment of a claim for current expenses of a railroad company in the hands of a receiver carries with it the right to claim payment out of the fund on which it is a charge. (Burnham v. Bowen, 4 S. Ct. 675, 111 US. 776, 28 L.Ed 596).*

*U.S. NY. 1919. Assignment to a certain amount by the obligee in a bond of the principal's obligation thereon carries with it the obligation of the surety given to secure the faithful performance of the duty required of the principal. (Brainerd, Shaler & Hall Quarry Co. v. Brice, 39 S.Ct., 458, 250 US. 229, 63 L.Ed. 951).*

*Also U.S. Dist. Col. 1878. If the thing be assigned, the right to collect the proceeds adheres to it, and travels with it whithersoever the property goes. They are inseparable. (Phelps v. McDonald, 99 US. 298, 25 L. Ed. 473).*

*Nature and Extent of Rights of the Assignee in general. U.S. Ky. 1830. Where an act of Congress authorized the assignment to the United States of all of a party's rights to money mentioned in a certain receipt when the assignment was made, the legal right was vested in the government, and a charge against the party who had executed the receipt on the books of the Treasury was authorized (U S. v. Buford, 28 US. 12, 3 Pet. 12, 7 L. Ed 585).*

*Also in an action by the United States to recover $10,000 (Ten Thousand) allegedly received by defendant to the use of the United States, where declaration was special on a Treasury Account, and account was raised on the Assignment of a receipt, the claim of the United States could not be considered as existing prior to the Assignment. (US. v. Buford, 28 US. 12, 3 Pet. 12, 7 L. Ed. 585).*

*Including, U.S. Dist. Col. 1854. Generally, a purchaser of a chose in action or of an equitable title must abide by case of person from whom he buys, and is entitled to that persons remedy, but in some instances, a purchaser, by substaining character of a bona fide Assignee, will be in a better situation than the seller. (Judson v. Corcoran, 58 US. 612, 17 How. 612, 15L, Ed. 231).*

*As affected by Notice of Assignment. Pa. 1776. The Assignee of a chose in action not negotiable takes it subject to all the equities, which existed between the Assignor and the Maker thereof at the time of the Assignment, and all such equities as may attach in favor of the Maker, before notice of such Assignment by the Assignee to the Maker. (Wheeler v. Hughes, / US. 23, / Dall. 23, 1 L. Ed. 20).*

*So the overall effect of filing a separate Assignment is that after the filing of a statement or a copy of the Assignment, the Assignee is now the Secured Party of record. (UCC § 9-405 (3) See also § 9-405:1). Also filing a Notice of Assignment does not in itself terminate any rights that the Assignor may have in the assigned Security Interest. (Minnesota. Van Diest Supply Co. v. Adrian State Bank [1981 Minn) 305 NW2d 342, 31 UCCRS 420). And if a financing statement shows the Assignment of the Security Interest, the Secured Creditor-Assignor has no standing to bring an action for the conversion of the Collateral. (Illinois. Art Signs, Inc. v. Schaumburg State Bank 1987 1 Dist. 162 Ill.App. 3d 955.516 NE2d 341.5 UCCRS 2d). Which also can he an Assignment without Recourse, once a transfer is made by a dealer to a bank without recourse is Significant in showing that the transfer Assigned the Rights of the dealer in the Contract. (Arizona. Empire Machinery Co. v. Union Rock & Materials Corp. (/978 App) 1/9 Ariz /45, 579 P2d 11/5, 24 UCCRS 232).*

*The Purpose and Effects section of this Brief in Support were taken from Secured Transactions, Section 9-405.*

*Assignment of Account is the transfer to the Assignee giving him a right to have moneys when collected applied to payment of his debt. (Nanny v. H. E. Pogue Distillery Co., 56 Cal App.2d 817, 133 P. 2d 686, 688. Also Black's Law Dictionary,).*

*Without Recourse, this phrase, used in making a qualified indorsement of a negotiable instrument, signifies that the indorser means to save himself from liability to subsequent holders, and is a notification that, (payment is refused by the parties primarily liable, recourse cannot be had to him. (Thompson v. First State Bank; /02 Ga. 696, 29 S. E. 6/0; Binswanger V. Hewitt, 79 Misc. 425, 140 N Y. S. /43, 145. Also Black's Law Dictionary).*

*Payment or satisfaction, the liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction. As according to U CC. § 3-603.*

*Tender of payment, any party making tender of full payment to holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees. As according to UCC. § 3-604.*

# Exhibit 1

## TITLE 12> (CHAPTER 3> SUBCHAPTER XII> §-411

### §-411 - Issuance to reserve banks; nature of obligation; redemption

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal Reserve banks through the federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal Reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve Bank.

# Exhibit 2

DEBT IS TRANSFERRED BY ASSIGNMENT

STANEK V. WHITE. (No. 26178.)

Supreme Court of Minnesota. Oct. 14, 1927.

(Syllabus by the Court)

I. Bankruptcy g=434-Moral obligation to pay debt, represented by note from which debtor was released in bankruptcy, held sufficient consideration for new note.

In an action on a promissory note given for a note from which debtor had been released by a discharge in bankruptcy, held:

That the moral obligation to pay the original debt is a sufficient consideration to support the new promise to pay.

2. Bankruptcy 434-After discharge, debt was assignable, as respects consideration for new promise.

After a discharge, the original debt has sufficient vitality to be assignable.

3. Bankruptcy ='436(3)-Possession of original note, as to which maker was discharged in bankruptcy and which he received on making new note, held to make prima fade showing of ownership.

Plaintiff's possession of the original note made a prima facie case of ownership.

Appeal from Municipal Court of Minneapolis; C. L. Smith, Judge.

Action by William It. Stanek, as administrator of the estate of Clara Koller Stanek, deceased, against M. W. White. From a judgment for plaintiff, defendant appeals. Affirmed.

Lewis Severance, of Minneapolis, for appellant.

Allen & Fletcher and Thomas Vennum, all of Minneapolis, for respondent.

WILSON, C. J. (I] Appeal from judgment. Victor Stanek held a promissory note of defendant, who procured a discharge in bankruptcy. Thereafter defendant gave a note for $402.50 to Clara Stanek, the mother of Victor Stanek, who surrendered to him the original note. The administrator of the estate of Clara Stanek, now deceased, seeks to recover judgment upon the new note. The answer alleges want of consideration for the new note.

The original debt was not paid. The discharge in bankruptcy operated as a bar to its enforcement. The debt could be revived by a new promise, which, in Minnesota, must be in writing. G. S. 1923, 8456, subd. 4. The moral obligation involved in the original debt affords a sufficient consideration to support a new promise to pay the debt. Dunnell's Digest, 74S; Collier on Bankruptcy, vol. 1, p. 642; Gilbert's Collier on Bankruptcy (1927) 413. *Liability rests upon new promise to pay, not upon the original note. The discharge took the enforceability from the original note which still evidenced the moral obligation, and the new note revived the legal obligation.*

*(2] There is a distinction between a debt discharged and one paid. When discharged, the debt still exists, though divested of its character as a legal obligation during the operation of the discharge. Something of the original vitality of the debt continues to exist, which may be transferred even though the transferee takes it subject to the disability incident to the discharge. The fact that it carries something which may be a consideration for a new promise to pay, so as to make an otherwise worthless promise a legal obligation, makes it the subject of transfer by assignment. Badger v. Gilmnore, 33 N.H.* 361, 66 Am. Dec. 729. Indeed, there is no reason why a transferee of such note should not have the benefit of having the debt advanced to a condition of legal liability.

(3] The method of transfer from the original payee to the mother Is not important. The transfer was made after the discharge and before the new note was given. Plaintiff does not claim any rights superior to the original holder. Possession of the original note made a prima facie showing of ownership. Defendant received the same from her hands, and does not plead any lack of authority in the mother to surrender the old note for the new.

Affirmed.

Exhibit 1 and 2          Page 1 of 1

# Exhibit 3

Law Enforcement Manual III

3(27)(68) 1.4

Authority for Other Documents

LEM 3(27)(68)0 provides the authority for two other documents, the contents of which are extracted from this manual. They are (1) Document 6209 OP and IDRS Information, and (2) Document 5576-Vest Pocket Edition ADP Transaction Codes. Only Document 6209 s for Official Use Only.

3(27)(68)2 Entity Codes

3(27)(68)2.1 General

The Entity Codes identify the taxpayer as to account number, filing requirements, location, etc., and are recorded in the Entity Section of a taxpayer's account on the Master File.

3(27X68)2.2 Entity Account Number

(1) Each taxpayer account is maintained on the BMF, IMF, [RAF, or EPMF in Entity Account Number sequence. All returns and transactions processed must contain the taxpayer's correct account number. The Entity Account Number (EAN) or Taxpayer Identification Number (TIN) are also referred to as Employer Identification Number (EIN) or Social Security Number (SSN).
(2) BMF Entity Account Number--a nine-digit number assigned by the Internal Revenue Service Centers (SC) to taxpayers who must file business returns, officially entitled Employers' Identification Number. The printed format is: xx-xxxxxxx. Form 706 and 709 accounts will be in Social Security Number (SSN) sequence.
(3) IMF and IRAF Entity Account Number-The nine-digit Social Security Number assigned by the Social Security Administration to all individuals required to file individual returns. The printed format is: xxx-xx-xxx.
(4) EPMF Accounts-Accounts are maintained in Employer Identification Number sequence.
(5) Temporary 1MF or IRAF Social Security Number--a nine-digit temporary number assigned by the Service Center (9xx)-(xx)-(xxxx).
   (a) 900 through 999-indicates number is a temporary SSN.
   (b) The code of the service center assigning the number.
   (c) Numbers assigned consecutively beginning with 0001.
   (d) The printed format of a Temporary IMF or IRAF Entity Account Number is Txxxxxxxxx.
(6) IMF and IRAF: For printing on other than taxpayer notices and transcripts. a tenth digit (either zero or one and referred to as the SS N Validity Digit) is shown to the right of the 9-digit SSN. An asterisk (') appears next to the SSN on taxpayers notices and transcripts to indicate the SSN is invalid for the particular taxpayer.

| SSN Validity Digit | Explanation |
|---|---|
| 0 | The SSN is valid for the taxpayer using it |
| 1 | The SSN is not valid for the taxpayer using it |

page LEM 3(27)(68) 0-7 (1-1-90)     LEMT III-386     Official Use Only

Exhibit 3     Page 1 of 1

# Exhibit 4

Contract No. MA _____

## COMMITMENT TO GUARANTEE OBLIGATIONS

by

THE UNITED STATES OF AMERICA

Accepted by

Shipowner

THIS COMMITMENT TO GUARANTEE OBLIGATIONS, dated _____ (the "Guarantee Commitment"), made and entered into by the UNITED STATES OF AMERICA (the "United States"), represented by the SECRETARY OF TRANSPORTATION, acting by and through the MARITIME ADMINISTRATOR (the "Secretary"), and accepted on said date by _____, a _____(the "Shipowner").

RECITALS:

A. The Shipowner is the sole owner of the _____ and _____, Vessels built pursuant to the Construction Contract with (the "Shipyard").

B. To aid in financing the Construction of the Vessels, the Shipowner will borrow an aggregate principal amount equal to, _____% of the Depreciated Actual Cost or Actual Cost of the Vessels, as the case may be, as of the Closing Date. To accomplish such financing, the Shipowner has accepted this Guarantee Commitment subject to the terms and conditions set forth herein.

C. The Shipowner has entered into the Bond Purchase Agreement providing for the sale and delivery, on the Closing Date, of obligations in the aggregate principal amount of $ _____ to be designated "United States Government Guaranteed Ship Financing Obligations, Series" (the "obligations") having the maturity date and interest rate set forth herein.

D. As security for the Guarantees and the Secretary's Note, the Shipowner will execute and deliver the Security Agreement, Contract No. MA_____ , and the following agreements shall be executed and delivered: the Indenture, the Authorization Agreement, Contract No. MA _____ the Secretary's Note, the Mortgage, Contract No. MA _____, the Financial Agreement, Contract MA _____ and the Depository Agreement, Contract No, MA _____ .

Exhibit 4        Page 1 of 2

Document 1

# COMMITMENT TO GUARANTEE OBLIGATIONS

by

THE UNITED STATES OF AMERICA

Accepted by

Shipowner

(Under Title XI, Merchant Marine Act, 1936, as amended, and in effect on the date of this Guarantee Commitment)

TABLE OF CONTENT'S

Doc.
No.   Document

1   Commitment to Guarantee Obligations
2   Schedule One - Form of Opinion of Counsel
3   Appendix I – Form of Bond Purchase Agreement
4   Appendix II - Form of Trust Indenture
5   Schedule A - Schedule of Definitions to Trust Indenture
6   Exhibit 1- General Provisions Incorporated into the Trust Indenture by Reference
7   Exhibit 2- Forms of Obligation, Guarantee and Trustee's Authentication Certificate
8   Exhibit 3 - Form of Authorization Agreement
9   Appendix III - Form of Security Agreement
10  Exhibit 1 - General Provisions Incorporated into the Security Agreement by Reference
11  Schedule X - Schedule of Definitions
1 2 Exhibit 2 - Form of Secretary's Note
13  Exhibit 3 - Form of First Preferred Fleet Mortgage
14  Exhibit 4- Form of Title XI Reserve Fund anti Financial Agreement
15  Exhibit 5 - Form of Consents of Shipyards
16  Exhibit 6 - Construction Contracts
17  Exhibit 7- Form of Depository Agreement

Exhibit 4                Page 2 of 2

*Commercial Security Agreement*
*Non-Negotiable - Non-Transferable*
Filed For Record

DELAWARE DEPARTMENT OF STATE
U.C.C FILING SECTION
FILED 05:26 PM 04/22/2005
INITIAL FILING NUM: 3267880 6
AMENDMENT NUMBER: 5138650 8
SEV: 050329069

The Parties

DEBTOR

PHILLIP A DYE ORGANIZATION, TRADE MARK, TRADE NAME
(and all derivatives thereof)
403 UNION CHURCH ROAD
TOWNSEND, DE 19734

Social Security No: 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

Secure Parties, Private Natural Persons

Philippo Alo Wikvaye Ali Dey and Phillip Dye (and all derivatives thereof)
In care of 403 Union Church Road
Near 19734
Townsend, Delaware

AGREEMENT

This Security Agreement ("AGREEMENT") is made and entered into on February 1, 1945 by and between the 'real man' Philippo Alo Wikvaya Ali Dey and Phillip Dye (hereinafter known as the Secure Parties) and the Juristic Person/ Strawman Dummy Corporation PHILLIP A DYE, ORGANIZATION (hereinafter known as DEBTOR) Social Security Number 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.

NOW, THEREFORE, it is hereby agreed as follows:

Establishing the Aboriginal Birthright Family Name Inheritance Nationality. Aboriginal Document Recorded under the Title Name "The Great Sael Divinltas Al Moroccan Empire and Philippo Alo Wikvaya Ali Dey National Citizenship" Recording of Documents at the New Castle County Republic Recorder having the following recording information: Recording Number 20050413-0034651 Pages 22 Date April 13th 2005 09:44:36 AM, T20050028854.

*American Nationality: Moorish American Nationality National Consensus No: 55 [Declaration] Oral and Written Publishing of the Moorish National Identification the International Road Travel Document the Moorish American UN No: 215-020-145, Establishing of the National Birthright and Inheritance and Aboriginal National Family Name Philippo Alo Wikvaya Ali Dey.*

In consideration for the Secure Parties agreeing to provide certain Collateral and goods, identified hereinbelow, and certain accommodations (Photo ID Cards, Licenses, Pass Port, Credit Cards or any other ID instrument for accommodation) to the Debtor including, but not limited to, allowing the DEBTOR to act as an agent, utilized for the purpose of transmitting commercial activity for the benefit of the Secure Parties to the extent that the context otherwise required, for the purpose of conducting traffic in commercial activity, as a pipeline for the transmission of goods and chattel property and paper; and, as security for payment of all sums due, or to become due or owing by Debtor to the Secure Parties, Debtor hereby grants to the Secure Parties for valuable consideration a security interest in the Collateral described hereinbelow and agrees to provide to the Secure Parties the Indemnification Bond also contained hereinbelow, securing the indebtedness and agrees that the Secure Parties shall have the rights stated in this Agreement with respect to the collateral in addition to all other rights the Secure Parties may have by law.

The security interest granted herein secures any and all indebtedness and liabilities, whatsoever, owed by Debtor to the Secure Parties whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising and howsoever evidenced. This security interest is also given to secure any other debts owed by Debtor to the Secure Parties from time to time as stated herein below. The security interest granted herein secures the validity and authority claim of "Common Law Copy Right of the Trade Name: PHILLIP A DYE© and the Private Name Philippo Alo Wikvaya Ali Dey and Phillip Dye as well as any and all derivatives and variations In the spelling of said name.

COLLATERAL

*All Accounts, Contract Rights, Chattel Paper, General Intangibles, Inventory, Equipment and Fixtures; Whether owned now or acquired later; all accessions, additions, replacements, and substitution; all records of any kind relating to any of the foregoing; all proceeds (including insurance, bond, general intangibles and accounts proceeds), together with all the other real and personal property with all and singular the improvements, rights, ways, streets, alleys, driveways, passages, waters, watercourses, liberties, privileges, hereditaments, and appurtenances, whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents issues and profits thereof, and all estate right, title, interest, property, claim and demand whatsoever of the said Debtor, in law, equity, or otherwise however, of in and to the same and every part thereof including but not limited to the following: Certificate of Birth document Delaware Department of Health and Social Services. Division of Public Health Office of Vital Statistics; File No. 4500404; and all documents and/or instruments created using said birth documents: Delaware Driver's License No: 457075 Contract Terminated; New Castle County; and all documents and/or instruments created using said license number; Social Security # 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 and Social Security # 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: and all documents and/or instruments created using said Social Security Number and all proceeds thereof; all DEBTOR'S UCC Contract Accounts. U. S. Treasury Accounts and all proceeds thereof and all documents and/or instruments created using said Social Security Number, and all proceeds thereof used within said Treasury Accounts, of DEBTOR'S ORGANIZATION, corporations, business trusts and trusts, Voter's Registration: Name: N/A; Voter Registration No: N/A; Private Property: Marriage License; Record No: 12964; Husband's Name: PHILLIP A DYE; DOB. February 1, 1945; Wife: REBECCA J DYE (Birth name: Rebecca J Stafford); DOB: February 1, 1949; Date of Marriage: September 8, 1967; Place of Marriage; Town or City: Middletown; County: New Castle; State: DE; Private Personal Property: REBECCA JANE Social Security No: 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 DOB February 10, 1949 Lie. # 574208, ESTHER YVONNE DYE DOB April 12, 1972 Social Security No: 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, DANIEL ALDEN DYE DOB April 9, 1971, Social Security No: 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, PHILLIP ALLEN DYE Junior DOB October 3, 1968 Social Security No: 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, MARIAN ELAINE STAFFORD DOB July 16, 1963 Social Security No: 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; (1st) Real Estate Location; Town or City: Townsend; County: New Castle; Appoquinimink Hundred; State: DE; Subdivision Name: Olde Union Farms; Lot No: 12A; Parcel No: 1401600192; Liber No: Deed Record D: Volume 103; Page No: 93; Date Recorded: October 10, 1978; Name of Owners and/or Lienholders: Philippo Alo Wikvaya Ali Dey and Phillip Dye & Rebekah Neche Ali Dey and Rebecca Dye; Wills or Inheritances: N/A; Passport No: 094521951 and Passport No: 094507378; Name: Phillip Dye and Rebecca Dye; Country of Issue: USA; Private Property: 2 Story Log Home on Lot 12A, Olde Unions Farms; Account Type: checking; (1st Account)#: 8638-1; Bank Name: Dexsta Federal Credit Union; Name on Account: PHILLIP A DYE; Acct Type: checking; (2nd Account) #: 8638-70; Bank Name: Dexsta Federal Credit Union; Name on Account: REBECCA J DYE; Account Type: savings; New Castle School Employees Federal Credit Union; Name on Account: REBECCA J DYE; Account Type: savings; Home Equity Financial Responsibility The Global Healings Society Member Number HEB 0072004 Name of secured: Phillip Dye; Insurance Policy; Company Name: USAA; Type of Policy: Homeowners; Policy Number: 015863323; Name of Insured: PHILLIP A DYE; Private Property Travel Device (1). 1990 Chevy Blazer Model Number 1GNCT18ZXL0100695 (2). 1985 Honda Accord 2 Door Hatch Serial Number 1HGAD5326FA075941 (3). 1985 Honda Accord 2 Door Hatch Serial*

*Number 1HGAD5329FA040245 (Parts Only) (4). 1985 Honda Accord 4 Door Sedan Serial Number 1HGAD5439Fa061023 (Parts Only) (5). 1983 Honda 4 Door Station Wagon Serial Number JHMWD5527DS023189 (6). 1983 Honda 4 Door Station Wagon Serial Number 1HGSZ5429DA017579 (Parts Only) (7). 1983 Honda Civic Hatch Back Serial Number JHMSR5339DS032097 (8) 1966 Chevrolet Pick Up Truck Model C10 Serial Number C1446B124465 (9). 1965 Chevrolet Pick Up Truck Model C10 Serial Number C2545B124483; Any & all tangible and intangible personal property including but not limited to the following: All household furniture and equipment, jewelry, antiques, all art work, appliances, photography equipment, photographs and ancillary equipment, all audio and video equipment, including but not limited to, camcorders, VHS recording decks, and all tapes, DVDs, & CDs, if any. All office furniture and equipment, including but not limited to, desktop computers, monitors, printers, scanners, and all related equipment, all business equipment, all hand tools non-powered and powered, all stationary shop tools and equipment, all other buildings, sheds, and garages, if any. All sporting and recreational equipment and all other personal property; Trust: Jehovah Trust International (Private Trust), Solowiz Trust International (Private Trust), Diversified Counseling Consultants Private Business, Innovative Diversity Private Corporation, Wellness 2 Optimal Health, Health Assessment 4 Disease Prevention; Documentation Validating Moorish American Nationality: Copyright with the Copyright Office of the United States Library of Congress Washington, DC (1) Registration Number AA 222-141 Moorish American Nationality Card of Identification with Zodiac Constitution (2) Registration Number AA 209-316 Masonry-Astrology and History and Geography, Clock of Destiny (3) Registration Number A 77-869; Sovereignty Immunity of all Moorish American Nationals of the Continental United States Republic Filed for Record Form1099, Book 521 Page 579, ss# 10105905 Cook County, Illinois is the Authority; Registration of the Copyright Txu1-210-534 U.S.C. §-17 United States Copyright Office for the Moorish Science Temple of America Asbury Park, New Jersey Republic; Email Address dyepa@yahoo.com dyepa7@yahoo.com optimalhealth4wellness@yahoo.com: Postal Address for Debtor: 403 UNION CHURCH ROAD, TOWNSEND, DE 19734; Secure Party Location: In care of P.O. BOX 508, Odessa, Delaware Republic Territory [19730]: Secure Parties Location Lot 12A Olde Union Farms Appoquinimink hundred Townsend, Delaware Republic Territory.*

INDEMNITY CLAUSE

Know all men by these presents, that I, PHILLIP A DYE (DEBTOR), am held firmly bound unto Philippo Alo Wikvaya Ali Dey and Phillip Dye (the Secure Parties) in the sum of present Collateral Values and any debts or losses claimed by any and all persons against the Commercial Transactions and Investments of aforesaid Collateral up to the penal sum of Unlimited Amount ($ Unlimited) lawful money of the United States, for all payments due to be truly made. I bind myself, my heirs, executors, administrators and third party assigns, jointly, severally, and firmly by these presents.

The conditions of the above bond is, that whereas the Collateral described hereinabove and utilized for the purpose of transmitting goods in Commercial Activity by the Debtor are in pursuance of the Statutes in such case made, provided and indantured to the Secure Parties by which indenture the said Debtor covenanted to do certain things as stated in this agreement.

The conditions of this obligation are such that if the Secure Parties suffers any loss of Vested Rights in the said Collateral Property or Monetary Losses due to debts claimed against the aforesaid Collateral Property, or the Debtor, who binds himself by this obligation to make advance payments from Debtor's United State Treasury Accounts, established under IMF, BMF, IRAF, EPMF (temporary, permanent and current) accounts to any and all who make debt claims against any of the Collateral or Vested Rights in said Collateral of the Secure Parties, this obligation shall bind the Debtor in all respects, to fully and faithfully comply with all applicable provisions of law.

This bond shall effect as of the date hereon and shall remain in full force and effect until the surety (the Secure Parties) is released from liability by the written order of the UNITED STATES Government and provided that the Debtor may cancel this bond at any time and be relieved of further liability hereunder by delivery within thirty (30) days written notice to the Secure Parties. Such cancellation shall not effect any liability incurred or accrued by Debtor hereunder prior to the termination of said thirty-day (30) period. The Debtor will promptly reissue a bond before the end of the thirty-day (30) period for an amount equal to or greater than the value of this instrument unless the parties agree otherwise.

The Debtor (Indemnifying Party), without the benefit of discussion or division, does hereby agree, covenant and undertake to indemnify, defend and hold the Secure Parties (Indemnified Party) harmless from and against any and all claims, losses, liabilities, costs, interests and expenses (hereinafter referred to as "claims" or a "claim") including, without restriction, all legal costs, interests, penalties and fines suffered or incurred by the Secure Parties arising as a result of the Secure Parties having its personal guarantee with respect to any loan or general indebtedness of the Debtor including, without in any way restricting, the generality of the foregoing amount owing by the Debtor to all creditors.

The Indemnified Party (the Secure Parties/Surety) shall promptly advise the Indemnifying Party (Debtor) of any claim and provide the same with full details thereof, including copies of any document, correspondence, suit or action received by or served upon the Indemnified Party (the Secure Parties). The Indemnified Party (the Secure Parties) shall fully cooperate with the Indemnifying Party (Debtor) in any discussion, negotiations or other proceedings relating to any claim.

OBLIGATIONS OF THE DEBTOR

Debtor warrants and covenants to the Secure Parties as follows:

ORGANIZATION. Debtor is a corporation, business trust or trust which is duly organized, validly existing, and in good standing under the laws of the United States having a Common Law Copy Right of Trade Name a "Work of Art".

AUTHORIZATION. The execution, delivery, and performance of this Agreement by Debtors have been duly authorized by all necessary action by an organization, or bylaws, or (e) any agreement or other instrument binding upon Debtor or (b) any law, governmental regulation, court decree, or order applicable to Debtor.

PERFECTION OF SECURITY INTEREST. Debtor agrees to execute such financing statements and to take whatever other actions are requested by the Secure Parties to perfect and continue the Secure Parties' interest in the Collateral. Upon request of the Secure Parties, Debtor will deliver to the Secure Parties any and all of the documents evidencing or constituting the Collateral, and Debtor will note the Secure Parties' interest upon any and all chattel paper if not delivered to the Secure Parties for possession by the Secure Parties. Debtor promptly will notify the Secure Parties of any change in Debtor's name including any change to the assumed business names of Debtor. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Debtor may not be Indebted to the Secure Parties.

ENFORCEABILITY OF COLLATERAL. To the extent the Collateral consists of accounts, contract rights, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content, and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

REMOVAL OF COLLATERAL. Debtor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Debtor's address shown above, or at such locations as are acceptable to Principals. Except in the ordinary course of its business, including sales of inventory, Debtor shall not remove the Collateral from its existing locations without the prior written consent of the Secure Parties. To the extent that the Collateral consists of vehicles, or other titled property, Debtor shall not take or permit any action requiring registration, sale, or disposal, without the prior written consent of the Secure Parties.

TRANSACTIONS INVOLVING COLLATERAL. Except for inventory sold or accounts collected in the ordinary course of Debtor's business, Debtor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Debtor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of the Secure Parties. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by the Secure Parties, all proceeds from any disposition of the Collateral

(for whatever reason) shall be held in trust for the Secure Parties and shall not be commingled with any other funds: provided however, this requirement shall not constitute consent by the Secure Parties to any sale or other disposition. Upon receipt, Debtor shall immediately deliver any such proceeds to the Secure Parties.

TITLE. Debtor represents and warrants to the Secure Parties that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those reflecting the security interest created by this Agreement or which the Secure Parties has specifically consented. Debtor shall defend the Secure Parties' rights in the Collateral against the claims and demands of all other persons.

MAINTENANCE AND INSPECTION OF COLLATERAL. Debtor shall maintain all tangible Collateral in good condition and repair. Debtor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. The Secure Parties and its designated representatives and agents shall have the right et all reasonable times to examine, inspect, and audit the Collateral wherever located. Debtor shall immediately notify the Secure Parties of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

TAXES, ASSESSMENTS AND LIENS. Debtor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Debtor may withhold any such payment or may elect to contest any lien if Debtor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long es the Secure Parties' interest in the Collateral is not jeopardized in the Secure Parties' sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Debtor shall deposit with the Secure Parties cash, a sufficient corporate surety bond or other security satisfactory to the Secure Parties in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Debtor shall defend itself and Debtor shall satisfy any final adverse judgment before enforcement against the Collateral.

COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS. Debtor shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. Debtor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as the Secure Parties' interest in the Collateral, in the Secure Parties' opinion, is not jeopardized.

DEBTOR'S RIGHT TO POSSESSION. Until default, Debtor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Debtor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by the Secure Parties is required by law to perfect the Secure Parties' security interest in such Collateral. If the Secure Parties at any time has possession of any Collateral, whether before or after an Event of Default, the Secure Parties shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral, if the Secure Parties takes such action for that purpose as Debtor shall request or as the Secure Parties, in the Secure Parties' sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Debtor shall not of itself be deemed to be a failure to exercise reasonable care. The Secure Parties shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Collateral.

EXPENDITURES BY SECURED PARTY. If the Secure Parties must discharge or pay any amounts under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral, secured Party also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All expenditures incurred or paid by the Secure Parties for any purposes will then bear interest at the rate charged under the law.

SUBORDINATION OF DEBTOR'S DEBTS TO SECURED PARTY. Debtor agrees that the indebtedness of tha Debtor to The Secure Parties, whether now existing or hereinafter created, shall be prior to any such claim that Third Party may now have or hereafter acquire against Debtor whether or not Debtor becomes insolvent. Debtor hereby expressly subordinates any claim Debtor may have against The Secure Parties, upon any account whatsoever, to any claim that the Secure Parties may now or hereafter have against Debtor. In the event of insolvency and consequent liquidation of the assets of Debtor, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of the Debtor applicable to the payment of the claims of both the Secure Parties and Debtor shall be paid to the Secure Parties and shall be first applied by the Secure Parties to the indebtedness of Debtor to the Secure Parties. Debtor does hereby assign to the Secure Parties all claims which it may have or acquire against Debtor or against any assignee or trustee in the bankruptcy of Debtor, provided however, that such assignment shall be effective only for the purpose of assuring to the Secure Parties full payment in legal tender of the indebtedness. If the Secure Parties so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Debtor to Third Party shall be marked with a legend that the same are subject to this Agreement and shall be delivered to the Secure Parties. Debtor agrees, and the Secure Parties hereby is authorized, in the name of the Debtor, from the time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as the Secure Parties deems necessary or appropriate to perfect, preserve and enforce the rights under this Agreement.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

AMENDMENTS. This Agreement together with any Related Documents constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement expressly or orally shall be effective unless expressed in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

APPLICABLE LAW. This Agreement has been delivered to the Secure Parties and accepted by the Secure Parties in the State of Delaware. If there is a lawsuit, Debtor agrees upon the Secure Parties' request to submit to the jurisdiction of the Delaware State courts in the Judicial District at or nearest the Secure Parties' address shown above, or at the Secure Parties' option to the jurisdiction of the courts wherever any Property is located. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

ATTORNEY'S FEES; EXPENSES. Debtor agrees to pay upon demand all of the Secure Parties' costs and expenses, including reasonable attorney's fees and the Secure Parties' legal expenses, incurred in connection with the enforcement of this Agreement. The Secure Parties may pay someone else to help enforce this Agreement and Debtor shall pay the costs and expenses of such enforcement. Costs and expenses include the Secure Parties' reasonable attorney's fees and legal expenses whether or not there is a lawsuit, including reasonable attorney's fees and legal axpenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Debtor also shall pay all court costs and the court may direct such additional fees as may be directed by the court.

NOTICES. Except for revocation notices by Debtor, all notices required to be given by either party to the other under this Agreement shall be in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing.

INTERPRETATION. In all cases where there is more than one Debtor or the Debtor's principles, the United States Inc. or the State of Delaware is in any way involved, then all words used in this Agreement in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Debtor named in a Claim or when this Agreement is executed on more than one Debtor the words 'Debtor" respectively shall mean all and any one or more of them. The words Debtor and the Secure Parties include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

SEVERABILITY. Should any portion of this Agreement be judicially determined to be invalid or unenforceable, the remainder of this Agreement shall not be affected by such determination and shall remain in full force and effect. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability, or

Form UCC-3-001  Page 3 of 5  Philippo Alo Wikvaya Ali Dey and Phillip Dye Secure Parties
Non-Negotiable – Non-Transferable

validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

WAIVER. The Secure Parties shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by the Secure Parties. No delay or omission on the part of the Secure Parties in exercising any right shall operate as a waiver of such right or any other right. A waiver by the Secure Parties of a provision of this Agreement shall not prejudice or constitute a waiver of the Secure Parties' right otherwise to demand strict compliance with that provision or any other provision of this Agreement. Neither prior waiver by the Secure Parties, nor any course of dealing between the Secure Parties and Debtor shall constitute a waiver of any of the Secure Parties' rights or any of Debtor's obligations as to any future transactions. Whenever the consent of the Secure Parties is required under this Agreement, the granting of such consent by the Secure Parties in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of the Secure Parties.

## DEFAULT

The following shall be events of default hereunder: (a) failure by Debtor to pay any debt secured hereby when due; (b) failure by Debtor to perform any obligations secured hereby when the same should be performed.

EVENT OF DEFAULT. The words "Event of Default" mean and include any Events of Default set forth below in the section titled "Events of Default."

DEBTOR. The word Debtor means and includes without limitation, each and all of the Debtors and their Principals, sureties, and accommodation parties in connection with the indebtedness.

INDEBTEDNESS. The word "Indebtedness" means the indebtedness evidenced by this Agreement, including all principal and interest, together with all other indebtedness, costs, and expenses the Debtor is responsible under this Agreement or under any of the related documents. In addition, the word "indebtedness" includes all other obligations, debts and liabilities, plus interest thereon, of DEBTOR'S ORGANIZATION, or any one or more of them, to the Secure Parties, as well as all claims by the Secure Parties against Debtor, or any one or more of them, whether existing now or later, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated, whether Debtor may be liable individually or jointly with others, whether Debtor may be obligated as Debtor, surety, accommodation party or otherwise; whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

RELATED DOCUMENTS. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, registrations, securities with or without a pledge, trust receipts, field warehousing documents and factor's liens, accounts U. C. C. contract accounts, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EVENTS OF DEFAULT Each of the following shall constitute an Event of Default under this Agreement:

1. DEFAULT ON INDEBTEDNESS. Failure of Debtor to make any payment when due on the Indebtedness.

2. OTHER DEFAULTS. Failure of Debtor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or in any other agreement between the Secure Parties and Debtor. If any failure, other than a failure to pay money, is curable and if Debtor has not been given prior notice of a breach of the same provision of this Agreement, it may be cured (and no Event of Default will have occurred) if Debtor, after the Secure Parties sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b), if the cure requires more than fifteen (15) days, immediately initiate steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

3. FALSE STATEMENTS. Any warranty, representation or statement made or furnished to the Secure Parties by or on behalf of Debtor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

4. DEFECTIVE COLLATERALIZATION. This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

5. INSOLVENCY. The dissolution or termination of Debtor's existence as a going business, the insolvency of Debtor, the appointment of a receiver for any part of Debtor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor.

6. CREDITOR PROCEEDINGS. Commencement of foreclosure, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Debtor against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Debtor's deposit accounts with the Secure Parties. However, this Event of Default shall not apply if there is a good faith dispute by Debtor as to the validity or reasonableness of the claim being the basis of the creditor proceeding and if Debtor gives the Secure Parties written notice of the creditor proceeding and deposits with the Secure Parties monies or a surety bond for the creditor proceeding, in an amount determined by the Secure Parties, in its sole discretion, as being an adequate reserve or bond for the dispute.

7. EVENTS AFFECTING DEBTOR. Any of the preceding events occurs with respect to any Debtor of any of the Indebtedness or such Debtor dies or becomes incompetent. the Secure Parties, at its option, may, but shall not be required to, permit the Debtor's estate to assume unconditionally the obligations arising under the Agreement in a manner satisfactory to the Secure Parties, and, in doing so, cure the Event of Default.

8. INSECURITY. The Secure Parties, in good faith, deems itself insecure.

RIGHTS AND REMEDIES ON DEFAULT If an Event of Default occurs under this Agreement, at any time thereafter, the Secure Parties shall have all the rights of the Secure Parties under the Uniform Commercial Code. In addition and without limitation, the Secure Parties may exercise any one or more of the following rights and remedies:

1. ACCELERATE INDEBTEDNESS. The Secure Parties may declare the entire Indebtedness, including any prepayment penalty the Debtor would be required to pay, immediately due and payable, without notice.

2. ASSEMBLE COLLATERAL. The Secure Parties may require Debtor to deliver to the Secure Parties all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. The Secure Parties may require Debtor to assemble the Collateral and make it available to the Secure Parties at a place to be designated by the Secure Parties. The Secure Parties also shall have full power to enter upon the property of Debtor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Debtor agrees the Secure Parties may take such other goods, provided that the Secure Parties makes reasonable efforts to return them to Debtor after repossession.

SELL THE COLLATERAL. The Secure Parties shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of Debtor. The Secure Parties may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, The Secure Parties will give Debtor reasonable notice of the time following any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate unless payment of interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

4. APPOINT RECEIVER. To the extent permitted by applicable law, The Secure Parties shall have the following rights and remedies regarding the appointment of a receiver: (a) The Secure Parties may have a receiver appointed as a matter of right, (b) the receiver may be an employee of the Secure Parties and may serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate

unless payment of interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

5. COLLECT REVENUES, APPLY ACCOUNTS. The Secure Parties, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. The Secure Parties may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues there from and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as the Secure Parties may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choosas in action, or similar property, the Secure Parties may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as the Secure Parties may determine, whether or not Indebtedness or Collateral is then due. For these purposes, tha Secure Parties may, on behalf of and in the name of Debtor, receive, open and dispose of mail addressed to Debtor; change any address to where mail and payments are to be sent; and andorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, the Secure Parties may notify account debtors and obligors on any Collateral to make payments directly to the Secure Parties.

6. OBTAIN DEFICIENCY. If the Secure Parties chooses to sell any or all of the Collateral, the Secure Parties may obtain a judgment against Debtor for any deficiency remaining on the Indebtedness due to the Secura Partias aftar application of all amounts received from the exercise of the rights in this Agreement. Debtor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

7. OTHER RIGHTS AND REMEDIES. The Secure Parties shall have all the rights and remedies of a secured creditor under tha provisions of the Uniform Commerciel Code, as may be amended from time to time. In eddition, The Secure Parties shall have end may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

8. CUMULATIVE REMEDIES. All of the Secure Parties' rights and remedies, whather evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by the Secure Parties to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Debtor under this Agreement, after Debtor's failure to parform, shall not affect the Secure Parties' right to declare a default and to exercise its remedies.

### 𝕮𝖔𝖕𝖞𝖗𝖎𝖌𝖍𝖙 𝕹𝖔𝖙𝖎𝖈𝖊 𝖔𝖋 𝕿𝖗𝖆𝖉𝖊𝖒𝖆𝖗𝖐 𝕿𝖗𝖆𝖉𝖊 𝕹𝖆𝖒𝖊 𝖆𝖓𝖉 𝕮𝖔𝖒𝖒𝖊𝖗𝖈𝖎𝖆𝖑 𝕹𝖆𝖒𝖊 𝖂𝖔𝖗𝖐 𝖔𝖋 𝕬𝖗𝖙

**𝕮𝖔𝖕𝖗𝖎𝖌𝖍𝖙** All rights reserved re common-law copyright of trade-name/trade-mark commercial neme PHILLIP ALLEN DYE© as well as any end all derivatives and variations in the spelling of said tradename/trade-mark/commercial name - Copyright 1945 by Philippo Alo Wikvaya Ali Dey end Phillip Dye. Said trade-name/trade-mark/commercial name, PHILLIP ALLEN DYE©, may neither be used, nor reproduced, neither in whole nor in part, nor in any manner whatsoever, without the prior, express, written consent and acknowledgement of Philippo Alo Wikvaya Ali Dey and Phillip Dye as signified by the red-ink signature of Philippo Alo Wikvaya Ali Dey and Phillip Dye, hereinafter "the Secure Parties." With the intent of being contractually bound, any Juristic Person, as well as the agent of said Juristic Person, consents and agrees by this Copyright Notice that neither said Juristic Person, nor the agent of said Juristic Person, shall display, nor use in any manner, the trade-name/trade-mark/commercial name, nor common-law copyright described herein, nor any derivative of, nor any variation in the spelling of, said name without the prior, express, written consent and acknowledgement of the Secure Parties, as signified by the Secure Partias' signature in red ink. Secured party neither grants, nor implies, nor otherwise gives consent for any unauthorized use of PHILLIP ALLEN DYE©, and all such unauthorized use is strictly prohibited. The Secure Parties is not now, nor has Secured party ever been, en accommodation party, nor a surety, for the purported debtor, i.e. PHILLIP ALLEN DYE," nor for any derivative of, nor for any variation in the spelling of, said name, nor for any other juristic person, and is so-indemnified and held harmless by Debtor, Le. "PHILLIP ALLEN DYE," in the Indemnity Clause in this Security Agreement against any end all claims, legal actions, orders, - warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, - liens, levies, penalties, damages, interests, and expenses whatsoever, both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered by, imposed on, and incurred by Debtor for any end every reason, purpose, and cause whatsoever. Self-executing Contract in event of Unauthorized Use: By this Copyright Notice, both the Juristic Person and the agent of said Juristic Person, hereinafter jointly and severally "User," consent and agree that any use of PHILLIP ALLEN DYE© as well as any and all derivatives and variations in the spelling of said trade-name/trade-mark/commercial name, other than authorized usa as set forth above constitutes User's indirect confession and confession of judgment of unauthorized use of seid trade-name/trade-mark-commercial name, contractually binds User, and signifies that User: (1) grants the Secure Parties a security interest in, and a distress warrant and lien against, User's property and interest in property in the sum certain amount of $750,000.00 per each trade-name/trade-mark commercial nama used, per each occurrence of use, plus triple damages, plus costs for each such use, as well as for each end every use of any and all derivatives and variations in the spelling of PHILLIP ALLEN DYE©; (2) authenticates a Security Agreement wherein User is debtor and Philippo Alo Wikvaya Ali Day and Phillip Dye is the Secure Parties and User pledges all of User's property and interest in property as collateral for securing User's contractual obligation; (3) authenticates a UCC Financing Statement wherein User is debtor and Philippo Alo Wikvaya Ali Dey and Phillip Dye is tha Secure Parties; (4) consents and agrees that said Financing Statement is a continuing financing statement, authorizing the Secure Parties's filing of any continuation statement necessary for maintaining Secure Parties's perfected sacurity interest in all of User's property and rights in property pledged as collateral in the aforementioned Security Agreement, until User's contractual obligation theretofore incurred has been fully satisfied; (5) authorizes the filing of the aforementioned UCC Financing Statement and Security Agreement in the UCC filing office by Secure Parties; (6) consents and agrees that any and all such filings referenced in paragraph "(5)" above are not, and may not be considered, bogus, and that User will not claim that any such filing is bogus; and (7) waives ell defenses. User further consents and agrees with all of the following: Payment Terms: In accordance with fees for unauthorized use of PHILLIP ALLEN DYE© as set forth above, User hereby consents and agrees that User shall pay Secure Parties all unauthorized-use fees in full within five (5) days of date Secure Parties's invoice, hereinafter "Invoice," itemizing said fees is sent. Default Terms: In event of non-payment in full of all unauthorized-use fees by User within five (5) days of date Invoice is sent, User shall be deemed in default and ell of User's collateral becomes property of Secure Parties terms for Curing Default: Upon default as set forth above, User may cure User's default within twenty (20) days only by payment in full. Terms of Strict Foreclosure: Users non-payment in full of all unauthorized-use fees itemized in Invoice within said twenty- (20) day period for curing default as set forth above authorizes Secure Partias's immediate nonjudicial strict foreclosure on all of User's former property pledged as collateral for securing User's contractual obligation as set forth, hereinabove. Ownership subject to common-law rights, common-law copyright end/or UCC Financing Statement and Security Agreement filed with Delaware Secretary of Stete-Division of Corporations UCC Section. Record Owner: Philippo Alo Wikvaya Ali Dey and Phillip Dye, Autograph Common Law Copyright© 1945.

This statement, upon presentation to the filing officer, is considered to be FILED FOR RECORD in accordance with The Delaware Code Annotated, Title 6, Commerce and Trade § 9-401 and § 9-403 (1). See Study Comment (1).

Date: April 19, 2005

DEBTOR Signature: /s/ PHILLIP A DYE   Secure Parties accept the DEBTOR'S signatures in accord with Delaware Code Title 8 § 3-401 and Del Code Title 6 § 1-201

Secure Parties Signature: *Philippo Alo Wikvaya Ali Day*

Secure Parties Signature: *Phillip Dye*   Principle's signature in accord with Delaware Code Annotated Title 6 § 3-415 and § 3.419.

## DEFINITIONS AND GLOSSARY OF TERMS

As used in this Security Agreement, the following words and terms shall have the meanings ascribed to them in this section, non obstante. From Black's Law Dictionary and The Delaware Code Annotated Title 6 Commerce and Trade.

*"Accommodation Party"* See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 3-415 and § 3-419.

*"Account"* See Black's Law Dictionary, 69, ad. Account. See also Del Code Title 6 § 4-104, and § 9-106.

*"Agent"* See Black's Law Dictionary, 6th Ed. "Agreement" See Black's Law Dictionary, 6th ad. See also § 1-201 (3). "Artificial Person" See Black's Law Dictionary, 7th Ed. See also Dummy Corporation, Juristic Person and Strawman. "Bailee" See Black's Law Dictionary, 8th Ed. See also Del Code Title 6 § 7-102 (1) (a).

*"Beneficiary"* See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 5-103 (Secure Parties).

*"Buyer"* See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 §2-103(1) (a).

"Chargeback" See Black's Law Dictionary, 6th ad. See also Surety and Del Code Title 6 § 4-212.

*"Chattel Paper"* See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 9-105 (b).

*"Claim"* means: 1. Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. 2. To demand as one's own, challenge of property or ownership of a thing wrongfully withheld. See Hill v Henry, 66 N.J. Eq. 150, 57Atl. 555. Also a claim to state. See Douglas v Beasley 40 Ala. 147; Prion v Pennsylvania 16 pet. 615, 10 Led 1060. "Collateral" See Black's Law Dictionary, 6th Ed. And Del Code Title 6 § 9-105 (1) (c).

*"Contract"* See Black's Law Dictionary, 6th ad. And Del Code Title 6 § 1-201 (li).

*"Contract Right"* See Del Code Title 6 § 9-106.

*"Creditor"* means a person to whom a debt is owing by another person who is the "debtor". One who has a right to require the fulfillment of an obligation or a contract One to whom money is due, and, in ordinary acceptation, has reference to financial or business transactions. The antonym of "debtor". See also Black's Law Dictionary, 6th ad. And Del Code Title 6 § 1-201 (12) (Secure Parties).

*"Currency"* See Black's Law Dictionary, 7th ad.

*"Derivatives,"* means coming from another, taken from something preceding secondary. That not having its origin in itself but owes is existence to something foregoing. Anything obtained or deduced from another. See Black's Law Dictionary, 6th Ed.

*"Debt"* See Black's Law Dictionary, 6th ad. See also Burke v Boulder Milling & Elevator Co. 77 Cob. 230, 235 P. 574, 575 and US Sugar Equalization Board v P De Ronde & Co. C.C. A. Del, 7 F.2d 981, 984.

*"Debtor"* means THE ORGANIZATION named herein and all derivatives thereof. See also Black's Law Dictionary, 6th Ed. And Del Code Title 6 § 9-105 (1) (d).

*"Delivery"* See Black's Law Dictionary, 6th ad. And Del Code Title 6 § 1-201 (14).

*"Documents of Title"* See Del Code Title 6 § 1-201 (15), Del Code Title 6 § 7-104. See also Black's Law Dictionary, 7th Ed.

*"Dummy Corporation"* means THE ORGANIZATION named herein and all derivatives thereof; an artificial person or legal entity created by or under the authority of the laws of a state or nation, composed, in some rare instances of a single person (such as the Debtor). "The corporation is distinct from the individual or individuals who comprise it." Such entity subsists as a body politic under a special denomination, regarded in law as having a personality and distinct from that of its several members. See Dartmouth College v Woodward (4 Wheat), 518, 636,857, 4 L.Ed. 629; US v Trinidad Coal Co. 137 U.S. 160, 11 S.Ct 57,34 Led. 640; Andrews Bros. Co. v Youngstown Coke Co. 86 F.585, 30 C.C.A.293; State v Thistle Down Jockey Club, 114 Ohio St. 582, 151 N.E. 709, 711; Congdon v Congdon 160 Minn. 343, 200 N.W. 76, 87; Forest City Mfg Coy International Ladies Garment Workers Union Local No 104,233 Mo.App 935, 111 SW. 2d. 934; Porter v Railroad Co. 76111.573; Nebraska Wheat Grower's Ass'n v Smith 115 Nab. 177,212 N.W. 39,44 in re Crown Heights Hospital 183 Misc. 563,49 N.Y.S.2D. 2d 658,660; Froelich and Kuttner of Manila P.1. V Sutherland 57 App. D.C. 294, 22 F.2d 870, 872. And also "in rare instances where it lists a single person (such as the Debtor) this would be considered a corporation sole, consisting of only that one person only and his successors, in some particular station, who are incorporated by law in order' to give them some legal capacities and advantages, particularly that of perpetuity, not available to natural persons." (Or in the present situation, to give them some legal capacity or advantage of dealings in the government commercial activities not available to natural persons.) See Step. Comm. 168,169; First Parish v Dunning 7 Mass. 447; Reid v Barry 93 Fla. 849, 112 5r 616, 859 The court cases also state that a corporation may exist as Domestic or Foreign, with reference to the laws the and the of any given state, a "domestic" corporation is one created by, or organized under, the laws of that state; a "foreign" Corporation is one created by or under the laws of another state, government, or country. (As in the present situation of a U. S. Corporation in Puerto Rico, see (BMF) Business Master File. In re Grand 110 Pa. 613, 1 A.582; Fowler v Chillingworth 667, 669; in re Ewles Estate, 105 Utah 507, 143 P.2d 903, 905. They also state that "A Corporation de facto is one existing under the color of law and in pursuance of an effort made in "good faith' to organize a corporation under the statue; an association of men claiming to be legally Incorporated company, and exercising the powers and functions of a corporation, but without actual lawful authority to do so.' See Foster v Hare 26 Tex. Civ App 177,62 S.W. 541 Cedar Rids Water Co v Cedar Rapids 118 Iowa, 234,91 NW. 1081; Tulare Irrig Dist V Shepard 185 U.S. 1,22 S.Ct 531,46 L.Ed. 773; Evans v Anderson 132 Minn. 59,155 NW. 1040, 1041. The fictitious named (Debtor), a strawman, or dummy corporation created by the government without knowledge or intent of the natural person (Secure Parties), only exists under the color of law and claiming only to be legally incorporated for the purpose of commerce, and exercising the powers and functions of a corporation, without actual lawful authority to do so, but strictly for the benefit of the government and its commerce. The government shows the capital letter spelling of the Debtor name when they created the "fictitious named' corporation, due to the need of a specific name required for each separate legal entity's identification. Therefore when a corporation is constructed, a name is always given to it, or supposing to be actually given, will attach to it by implication, and by that name alone it must sue and be sued, and do all legal acts, though a very minute variation therein is not material, and the name Is capable of being changed (by competent authority) without affecting the identity or capacity of the corporation. See Wharton on Corporations See also Black's Law Dictionary, 6th Ed.

*"Duty of Care"* Contractual Limitation' See Del Code Title 6 § 7-204.

*"Entrusting"* See Del Code Title 6 § 2-403 (2), (3), and (4). "General Intangibles" See Black's Law Dictionary, 6th Ed. And Del Code Title 6 § 9-106.

"**Goods**" See Black's Law Dictionary, 6th Ed. And § 2-105, 9-105, and § 9-109.
"**Incapacity**" See Black's Law Dictionary, 6th and 7th Ed. See Del Code Title 6 § 3-305 (2) (b).
"*Indemnities*" See Del Code Title 6 § 5-113.
"*Indemnity*" means a collateral contract or assurance by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person. See Nat'l Bank of Tifton v Smith 142 Ga. 663, 83 S.E. 526, 528, I.R.A. 1915B, 116. See also Black's Law Dictionary, 7th Ed.
"*Instrument*" See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 3-102 and § 9-105.
"*Item,*" mean part or parts of a whole. See also Del Code Tile 6 § 4-104 (g).
"*Juristic Person*" Site UNITED STATES V. SCOPHONY CORP., 69 F.Supp 666," From earliest times the law has enforced rights and exacted liabilities by utilizing a corporate concept - by recognizing, that is Juristic Persons other than Human Beings. The theories by which this mode of legal operation has developed, has been justified, qualified, and defined are the subject matter of a very sizable library. The historic roots of a particular society, economic pressures, and philosophic notions, all have had their share in the laws response to the ways of men in carrying on their affairs through what is now the familiar device of the Corporation Attribution of legal rights and duties to a JURISTIC PERSON other than man is necessarily a metaphorical process. And none the worse for it No doubt," Metaphors in law are to be narrowly watched, Cardozo J Berkey V Third Avenue R Co. 244 N.Y. 84, 94. But all instruments of thought should be narrowly watched lest they be abused and fail in their service to reason." Also see DEBTOR, DUMMY CORPORATION, ARTIFICIAL PERSON. "*Liability*" means every kind of legal obligation, responsibility, or duty. Also the state of being hound or obliged in law or justice to do, pay or make good something. See Mayfield v First Nail Bank of Chattanooga, Tenn., C.C.A Tenn. 137 F.2d 1013,1019; Fell v City of Coer d' Alene 23 Idaho 32,129 P. 643, 649, 43 L.R.A. N.S. 1095; Breslawv Rightmire 196 N.Y.S.2D. 539, 541, 119 Misc. 833. See also Black's Law Dictionary, 6th Ed.
"*Money*" means the medium of exchanged authorized or adopted by a government as part of its currency. See also Del Code Title 6 § 1-201 (24).
"*Natural Person*" means a human being, as distinguished from an artificial person created by law, refers to Secure Parties named herein. See Black's Law Dictionary 7th ad.
"*Negotiable*" means capable of being transferred by indorsement or delivery so as to pass to holder the right to sue in his own name and take free of against assignor payee. Fischbach & Moore v Philadelphia Nat Bank 134 Pa. Super. 84, 3 A.2d 1011, 1012. See also Black's Law Dictionary, 4th ad.
"*Non Negotiable*" means not negotiable not capable of passing title or property by indorsement or delivery. Any document of title that is not a negotiable document. An instrument which may not be transferred by indorsement and delivery or by delivery alone, though it maybe assigned. The transferee does not become a holder unless it is negotiated. Compare Negotiable. See Black's Law Dictionary, 70, ad. See also Del Code Title 6 § §7-501 and 7-502.
"*Non obstante*" means a phrase used in documents to preclude any interpretation contrary to the stated object or purpose. See Black's Law Dictionary, 60, ad. "Notice " means warning or information of something. See Del Code Title 6 § 1-201 (25) (a), (26), and (27).
"*On Demand*" See Black's Law Dictionary, 6th ad. See *also* Del Code Title 6 § 3-108.
"*Organization*" See Black's Law Dictionary, 6th ad. See also Del Code Title 6 § 1-201(28) refers to DEBTOR DUMMY CORPORATION, and STRAWMAN.
"*Party*" means a person concerned, having, or taking part in any affair, matter, transaction, or proceeding, considered individually. See also Del Code Title 6 § 1-201 (29).
"*Persons*" See Black's Law Dictionary, 7th Ed. See also Del Code Title 8 § 1-201 (30).
"*Proceeds.*" See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 9-306 (1).
"*Property*" in the strict legal sense, means an aggregate of rights guaranteed and protected by the government, and in the ordinary sense, the thing itself, rather than the rights attached to it. See 62 L N.Y. Supp 1000.
"*Real Man*" means a real live flesh and blood man; refers to the Secure Parties named herein and all derivatives thereof. "There, every man is independent of all laws, except those prescribed by nature. Any institutions formed do not bind him by or his fellowmen without his consent." CRUDEN v NEALE 2 N.C. 338 (1796) 2 S.E. 70.
"*Registered Form*" See Del Code Title 6 § 8-102.
"*Remedy for Breach of Collateral*" See Del Code Title 6 § 2-701.
"*Remedy of Indemnity*" See Del Code Title 6 §5-115.
"*Representative*" See Black's Law Dictionary, 6th ad. And Del Code Title 6 § 1-201 (35) (Secure Parties) -
"*Right to Reimbursement*" See Del Code Title 6 § 5-114.
"*Rights Acquired to Indemnity*" See Del Code Title 6 § 7-504 (4).
"*Secondary Party*" See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 3-102.
"*Secure Parties,*" refers to the real man and natural person named herein, including any and all derivatives thereof. (also considered Creditor). See also Black's Law Dictionary, VI ad. And Del Code Title 6 § 9-105 (1) (l).
"*Securities*" See Black's Law Dictionary, 6th Ed. See also Del Code Title 8 § 8-102 and § 8-105. "Security Interest' See Black's Law Dictionary, 60, Ed. And Del Code Title 6 § 1-201 (34).
"*Seller*" See Black's Law Dictionary, 60, ad. And Del Code Title 6 § 2-103(1) (d).
"*Signature*" See Del Code Title 8 § 3-401 (considered signed).
"*Signed*" See Del Code Title 6 § 1-201 (considered signature).
"*Straw Man*" means THE ORGANIZATION named herein and all derivatives thereof. See Black's Law Dictionary, 6th Ed. Also DUMMY CORPORATION. See Also DEBTOR.
"*Surety*" See Black's Law Dictionary, 6th Ed. See also Del Code Title 6 § 1-201 (40) (considered Chargeback). "*Transferable*" is a term used in a quasi legal sense, to indicate that the character of assignability or negotiability attaches to the particular instrument, or that it may pass from hand to hand, carrying all rights of the original holder. The words" not transferable" are sometimes printed upon a ticket, receipt, or bill of lading, to show that the same will not be good in the hands of any person other than the one to whom first issued. See Black's Law Dictionary, 6th Ed.
"*Value*" See Black's Law Dictionary, Oh ad. See also Del Code Title 6 § 1-201 (44) and § 3-303.

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Phillip Allen: Dye, Secured Party

In Care of
403 Union Church Road
Townsend, Delaware [19734]

DELAWARE DEPARTMENT OF STATE
U.C.C FILING SECTION
FILED 05:26 PM 04/22/2005
INITIAL FILING NUM: 3267880 6
AMENDMENT NUMBER: 5138650 8
SRV: 050329069

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE # **3267880 6**

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address ☐ DELETE name ☐ ADD name

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME

6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Ali Dey | Philippo | Alo Wikvaya | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| In Care of PO Box 508 | Odessa | Delaware | [19730] | |

7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

See Attached Commercial Agreement Amend Collateral

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Dye | Phillip | | |

10. OPTIONAL FILER REFERENCE DATA
**Debtor's Signature:**     **Secured Party's Signature:**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)